UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
**HELEN MURPHY,**

    **Plaintiff,**

v.                                                                                  **COMPLAINT**

**CITY OF NEWBURGH,**

    **Defendant.**
------------------------------------------------------------x

    By and through her counsel, Michael H. Sussman, plaintiff alleges as and against defendant City of Newburgh:

### I. PARTIES

1. Plaintiff is a citizen of the United States, of legal age and a resident of the County of Ulster.

2. Defendant is a municipal corporation conducting business within this judicial district.

### II. JURISDICTION

3. As plaintiff timely dual filed a charge of unlawful racial discrimination with the EEOC and initiates this action within ninety days of receipt of a right to sue letter from the EEOC and as plaintiff alleges that defendant violated a law intended to protect her civil rights within this judicial district, this Honorable Court has

jurisdiction over this action pursuant to 42 U.S.C. section 2000e-5, 42 U.S.C. sections 1983 and 1988 and 28 U.S.C. sections 1331 and 1343.

### III. FACTUAL ALLEGATIONS

4. Plaintiff Helen Murphy is an African-American female.

5. Plaintiff has had substantial education and experience in accounting and finance in the private sector.

6. In the spring 2015, the City of Newburgh [hereinafter "the City" or "Newburgh"] offered plaintiff the position of Tax Collector.

7. In doing so, the City Manager and Comptroller knew that plaintiff has never worked in any comparable municipal position and, therefore, would need training and assistance in the myriad responsibilities and functions associated with this office.

8. Plaintiff made no contrary representations during the selection process and the City Manager and others involved on behalf of the defendant in the hiring process, repeatedly assured her that, if selected for the position, she would receive necessary training.

9. The then Comptroller, John Aber [hereinafter "Aber"], was responsible for overseeing Newburgh's financial functions, including the account and payroll clerk and the Tax Collector, and for providing the requisite training for plaintiff's position.

10. The Tax Collector is responsible for doing different functions seasonally.

11. Therefore, training for this position either must initially cover the myriad of functions or do so as the year progresses and new functions predictably arise.

12. Defendant's agents did neither, failing either to provide comprehensive training shortly after plaintiff commenced her employment and also refusing to provide her training as she faced new challenges during her brief tenure.

13. Aber specifically gave lip service to assisting plaintiff and adopted an irrational, punitive and discriminatory approach toward her.

14. On October 1, 2015, without giving her any verbal warning, Aber gave plaintiff a "written warning" premised on baseless claims concerning her performance and represented that, thereafter, he "will have weekly meetings with Helen to make sure she is improving."

15. In fact, Aber scheduled no such weekly meetings and plaintiff submitted a detailed rebuttal to his claim that she had failed, by then, to master substantial elements of her job responsibilities.

16. Between October 1, 2015 and the date of her termination, Aber provided plaintiff with no further performance review nor any memorandum of any sort chronicling issues he had with her.

17. In response to plaintiff's claim that she was denied appropriate training and terminated on account of her race, defendant claimed that it did not transfer certain

functions to her because of her perceived incompetence, that Aber had received several serious personnel complains about plaintiff, that plaintiff had exhibited certain time and attendance issues and had failed to make timely bank deposits.

18. Each of these claimed explanations for plaintiff's termination lacked a factual basis and was instead pretextual.

19. Specifically, defendant falsely claimed that it did not assign the handling of tax certiorari proceedings to her, though it had done so and she fulfilled the associated duties after some initial assistance.

20. Likewise, while claiming it had received personnel complaints against plaintiff, neither the City Manager nor Aber shared any of these with her or sought any response from her during her employment to these alleged complaints.

21. Indeed, on one occasion, Aber advised plaintiff that he had received complaints about her; however, when plaintiff sought the source and content of the complaint, Aber refused to discuss the matter with her.

22. Defendant claimed that on two occasions, months before her termination, Murphy recorded that she was working when she was not.

23. In one instance, after discussing this with the Comptroller and receiving his approval to do so, plaintiff attended a funeral during work hours.

24. No one from the city raised any issue about plaintiff's time and attendance during her employment and her supervisor approved and signed off on her time records without issue.

25. Finally, plaintiff supervised four cashiers who generally deposited tax proceeds collected from the public.

26. Plaintiff reviewed each collection to insure that it was properly recorded, the taxpayer credited with payment and the funds timely deposited.

27. During the fall 2015, penalties were to be applied to the accounts of certain tax-delinquent property owners.

28. Post-marked penalties were being imposed and had to be processed.

29. Aber advised plaintiff to hold, not deposit, payments until the system had been so updated and the majority of post-marked payments processed.

30. Plaintiff and her staff complied with this direction, yet, after her termination, defendant complained that it had found undeposited checks in her safe where plaintiff had held them per the direction she had received from Aber.

31. On August 22, 2015, plaintiff complained to the City Manager that Aber mistreated female employees and was harsh and verbally abusive toward her and other female subordinates.

32. As he understood that plaintiff was claiming that Aber treated female employees in a manner inferior to male employees, defendant's City Manager referred plaintiff's complaint to an outside entity for investigation.

33. The City Manager never shared the result of that investigation with the plaintiff.

34. During that investigation, the city accountant noted that she had assumed some of the functions of the Tax Collector because the prior incumbent had been unable to do them, not because of any incapacity on plaintiff's part; she also confirmed that other employees characterized Aber as "degrading."

35. As of October 1, 2015, Aber knew that plaintiff had complained that he was mistreating and failing to train her on account of her gender.

36. Aber's written warning dated October 1, 2015 was retaliation for plaintiff's complaint of discrimination which, Aber knew, was still being investigated.

37. In fact, at the meeting held on October 1, 2015, in discussing with plaintiff her allegedly poor performance, Aber told plaintiff, "This is what you get for wasting my time for the investigation," a reference to the investigation of his alleged mistreatment of her on the basis of gender.

38. On or about January 14, 2016, plaintiff received her last check from the defendant which terminated her on or about January 19, 2016.

39. In her position, plaintiff earned approximately $63,000/year and received benefits including health coverage, vacation and sick days.

40. Following plaintiff's termination, she complained to the City Council that she had not been given proper training and was unjustly terminated.

41. The City Council agreed to review plaintiff's termination, requesting an independent investigation into the actual work plaintiff performed as well as information on how she was trained and treated and a financial audit of the Tax Department, run by the City Comptroller, by the State Comptroller's office for a minimum of the prior two years.

42. Plaintiff was never provided the independent investigation or asked for any input into it.

43. To plaintiff's knowledge, the State Comptroller has not completed an audit of the city's Tax Department.

44. Several months after her termination, Aber was arrested for fourth degree grand larceny, a felony, and resigned from his position.

45. Plaintiff again sought restoration of her job, but defendant refused.

46. From the commencement of her employment, Aber, her supervisor, treated plaintiff in a dismissive manner on the basis of her gender and race.

47. To plaintiff's observation, Aber treated white males in a dissimilar and superior manner, valuing their knowledge, skills and abilities.

48. Aber expressed frustration that he needed to train and assist plaintiff and conveyed this attitude to other members of his staff.

49. Aber significantly influenced the termination of plaintiff's employment.

50. Plaintiff suffered public humiliation and embarrassment as a consequence of Aber's treatment and pre-judgment of her.

51. Plaintiff suffered emotional distress and anguish both by how Aber and the City Manager treated her and because of the stress occasioned by the very premature termination she suffered without just cause and on account of discrimination and retaliation and the consequent financial hardship so caused.

52. Despite assiduous efforts since her termination, plaintiff has been unable to find comparable employment.

## IV. CAUSES OF ACTION

53. Plaintiff incorporates paras. 1-52 as if fully re-written herein.

54. By terminating plaintiff on the basis of her race, defendant violated 42 U.S.C. section 2000e-5, et. seq.

55. By terminating plaintiff on the basis of her gender, defendant violated 42 U.S.C. section 2000e-5, et. seq.

56. By terminating plaintiff in retaliation for her complaint of discrimination, defendant violation 42 U.S.C. section 2000e-5 et. seq.

## V. PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court: accept jurisdiction of this matter, empanel a jury to hear and decide all issues within its authority, award to plaintiff compensatory and punitive damages as permitted by law, reinstate plaintiff to her position or, in the alternative, award her front pay for a period of four years and the costs and attorneys fees incurred in the prosecution of this action, as well as enter any other order the interests of justice or equity require.

                Respectfully submitted,

                Michael H. Sussman [3497]

Sussman & Associates
PO Box 1005
1 Railroad Avenue, Suite 3
Goshen, NY 10924
(845)-294-3991
Sussman1@frontiernet.net

Counsel for Plaintiff

Dated: December 5, 2016