UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HELEN MURPHY,

                          Plaintiff,

                                                          **OPINION AND ORDER**

            -against-
                                                          16 Civ. 9372 (JCM)

CITY OF NEWBURGH,

                          Defendant.

-------------------------------------------------------------X

Plaintiff Helen Murphy ("Plaintiff") commenced this action pursuant to Title VII of the

Civil Rights Act of 1964 (42 U.S.C. § 2000(e)), alleging that Defendant City of Newburgh (the

"City" or "Defendant") terminated her on the basis of her race and gender and retaliated against

her for complaining of discrimination. (Docket No. 1).  Presently before this Court is

Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure.[1] (Docket No. 27).  Plaintiff opposes the motion.[2] (Docket No. 34).  For the reasons

that follow, Defendant's motion is granted.

## I.  BACKGROUND

The following facts are gathered from each party's statement filed pursuant to Rule 56.1

of the Local Rules of the United States District Courts for the Southern and Eastern Districts of

New York ("Rule 56.1"),[3] each party's supporting affidavits and exhibits, and the pleadings

submitted by the parties in support of their contentions.

---

[1] The parties consented to jurisdiction by a United States Magistrate Judge for all purposes pursuant to 28 U.S.C. §
636(c). (Docket No. 16).

[2] The parties' briefs and supporting papers are hereinafter referred to as "Def. Br.," "Pl. Opp.," and "Def. Reply,"
respectively. (Docket Nos. 28, 34, 39).  All page number citations refer to the page number assigned upon electronic
filing.

[3] The parties' Rule 56.1 statements are hereinafter referred to as "Def. Statement," and "Pl. Response," respectively.
(Docket No. 29; Docket No. 36 at 1–23).  Where facts stated in a party's Rule 56.1 statement are supported by

## A. Plaintiff's Job and Training

Plaintiff, an African-American female, worked as a tax collector for the City of Newburgh from May 18, 2015 until January 19, 2016. (Def. Statement at ¶ 1; Pl. Response at ¶ 1). Consistent with the New York Civil Service Law and the Newburgh Civil Service Commission's Rules and Regulations, the City appointed Plaintiff as a tax collector for a one year probationary period. (Def. Statement at ¶ 19; Pl. Response at ¶ 19). During the course of her employment, Plaintiff worked directly under John Aber ("Aber"), the City Comptroller. (Def. Statement at ¶ 4; Pl. Response at ¶ 4). The City Manager, Michael Ciaravino ("Ciaravino"), oversaw the City's day-to-day operations and retained the exclusive authority to hire and fire the City's employees, including Plaintiff. (Def. Statement at ¶¶ 2–3; Pl. Response at ¶¶ 2–3).

As the City's tax collector, Plaintiff was responsible for collecting all taxes, assessments and water rents within the City. (Def. Statement at ¶ 33; Pl. Response at ¶ 33). Plaintiff was also responsible for calculating City water, sewer, sanitation and parking ticket fees, and supervising four cashiers. (Def. Statement at ¶ 34; Pl. Response at ¶34). The cashiers collected payments and entered them into the "KVS system," the City's computerized integrative financial system.

---

testimonial or documentary evidence and denied by only a conclusory statement by the other party without citation to conflicting testimonial or documentary evidence, the Court deems such facts true. *See* S.D.N.Y. Local Rule 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed admitted for purposes of the motion unless specifically controverted . . ."); S.D.N.Y. Local Rule 56.1(d) ("Each statement by the movant or opponent . . . controverting any statement of material fact[ ] must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). In addition, Plaintiff's Response denies certain statements, but does not identify any actual factual inconsistency. Where these counterstatements do not identify a true factual dispute, the Court treats the statement as undisputed. *See Martin v. Sprint United Mgmt. Co.*, 273 F. Supp. 3d 404, 408 n.1 (S.D.N.Y. 2017).

Attached to Plaintiff's Response to Defendant's Rule 56.1 Statement is a separate Counterstatement. (Docket No. 36 at 24–34). Plaintiff's Counterstatement cites only to her own affidavit submitted in opposition to Defendant's motion for summary judgment. (*See id.* (citing Docket No. 35)). It is well-settled, however, that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). Thus, to the extent Plaintiff's affidavit contradicts her previous deposition testimony, it will not be deemed to create a genuine dispute of fact. *Id.* ("[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial.").

(Def. Statement at ¶¶ 23, 36–37; Pl. Response at ¶¶ 23, 36–37). Plaintiff was then responsible for reconciling the information entered into the KVS system with the physical documents to ensure that the money owed and received were equal. (Def. Statement at ¶ 38; Pl. Response at ¶ 38). Proceeds received were to be deposited in the bank within two days of collection.[4] (Def. Statement at ¶ 41; Pl. Response at ¶ 41). However, money collected by the cashiers could not be deposited into the City's bank accounts until it was properly reconciled within the system. (Def. Statement at ¶¶ 39–40; Pl. Response at ¶¶ 39–40). In addition, Plaintiff had to submit monthly reconciliations to the Finance Department no later than the first week of the following month. (Def. Statement at ¶ 47; Pl. Response at ¶ 47).

Following her hiring, Plaintiff received "fundamental training" on the KVS system. (Docket No. 30-2 at 32). Payments for use of the City's water and sewer system were kept on a different computer system known as ICIS. (Def. Statement at ¶ 28; Pl. Response at ¶ 28). Though she did not receive any formal training on ICIS, Plaintiff's predecessor provided her with basic training on the system when she first started. (Docket No. 30-2 at 40–41). When she needed additional assistance, Plaintiff called KVS and ICIS support. (Def. Statement at ¶ 32; Pl. Response at ¶ 32).

**B. Plaintiff's Initial Job Performance**

Plaintiff became responsible for the monthly reconciliations in August of 2015. (Def. Statement at ¶ 50; Pl. Response at ¶ 50). Plaintiff asked cashier Vickiana DeMora ("DeMora") to show her how to do them. (Docket No. 30-2 at 26). DeMora ultimately handled the first two

---

[4] Plaintiff denies that this timeline was "required" and asserts that it was merely "preferred." (Pl. Response at ¶ 41). However, Plaintiff cites only to her own affidavit as support. (*Id.*). Moreover, her deposition testimony clearly supports the fact that proceeds were to be deposited within two days of collection. (Docket No. 30-2 at 16). As such, this cannot be considered a genuine dispute. *See supra* n.3.

months of reconciliation at Plaintiff's request. (*Id.* at 27 ("I asked her to do them so we can get caught up.")). After the first two months, DeMora continued to assist Plaintiff by showing her how to do the reconciliations. (Docket No. 30-2 at 27–28). Nevertheless, there were times when the figures in the reconciliations did not add up. (Def. Statement at ¶ 54; Pl. Response at ¶ 54).

On August 4, 2015, Plaintiff was asked whether she had time to learn how to process a refund for a tax certiorari. (Docket No. 30-11 at 4). Plaintiff responded that the following day would not work for her, as she had a fifteen minute meeting with Aber and other work she had to get to. (*Id.*). However, she indicated that she could allot thirty minutes for a lesson later in the week. (*Id.*). Aber, who was copied on the e-mail chain, questioned why Plaintiff could only allot fifteen minutes for their meeting and added that the tax certioraris were a "pressing issue." (*Id.* at 3). In response, Plaintiff explained that she was unavailable because ICIS was not working properly and she was working on getting that resolved.[5] (*Id.* at 2). On August 5, 2015, Aber again expressed that he wanted to meet with Plaintiff to discuss the tax certiorari process. (Docket No. 30-14 at 2). Plaintiff responded, "Ok. But I'm really not quite ready to take on the Tax Certs at this time. I'm learning a lot of things . . . and need more time to digest it all." (*Id.*).

## C. Plaintiff's August 2015 Complaint

In early August 2015, Plaintiff texted a complaint to Ciaravino about her interactions with Aber. (Def. Statement at ¶ 66; Pl. Response at ¶ 66). Plaintiff expressed concerns about the "condescending way" Aber addressed her and others on her staff. (Docket No. 30-3 at 14–15; Docket No. 30-16 at 2 ("I'm very upset and feel bullied by my immediate supervisor! . . . I will

---

[5] Glenn Kurcon ("Kurcon") of the City's Information and Technology Department met with Plaintiff to determine the source of the problem. (Docket No. 30-13 at 1–2). Kurcon concluded that the issues were related to human error and not the system itself. (*Id.*). Defendant asserts that Plaintiff incorrectly input information into the ICIS system. (Def. Statement at ¶ 63). Plaintiff, however, maintains that any inputting issues were not her fault. (Pl. Response at ¶ 63). Whether Plaintiff was the individual responsible for the inputting errors, however, is immaterial.

not be harassed, intimidated or bullied for voicing my opinion."); *see also* Murphy Aff.[6] at ¶ 8 ("I had observed Mr. Aber's brusque and dictatorial approach to me and other female staff members. . . . I saw Mr. Aber interact much more respectfully toward men at the workplace[.]")). Plaintiff then met with Ciaravino in person and reiterated her concerns. (Docket No. 30-3 at 17). Ciaravino told Plaintiff that an investigation would be conducted and that he would follow up with her to resolve the situation once the investigation was complete. (Def. Statement at ¶ 70; Pl. Response at ¶ 70). On August 4, Plaintiff texted Ciaravino, "I can not [sic] work effectively under these conditions! [Aber] is starting to make me feel very uncomfortable and is trying to make me feel like I can't do this job! . . . [H]e makes me feel alone and 'sink or swim.' I'm swimming but feel he's trying to drown me!" (Docket No. 30-17).

The City then conducted an investigation into Plaintiff's complaint. (Def. Statement at ¶ 73; Pl. Response at ¶ 73). Aber first learned of Plaintiff's complaint when he was interviewed as part of the investigation in August of 2015. (Def. Statement at ¶ 76; Pl. Response at ¶ 76). The report produced at the conclusion of the investigation found that Plaintiff's claims of harassment and bullying were unsubstantiated.[7] (Def. Statement at ¶¶ 78-79; Pl. Response at ¶¶ 78-79).

---

[6] Refers to the affidavit of Plaintiff Helen Murphy. (Docket No. 35).

[7] Plaintiff maintains that the contents of this report are inadmissible hearsay. (Pl. Response at ¶ 81). "Evidence submitted in support of a summary judgment motion must be admissible at trial, and the proponent of the evidence bears the burden of showing that the evidence is admissible." *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 469–70 (S.D.N.Y. 2008). "Generally, an investigatory report . . . would be hearsay, and therefore inadmissible at the summary judgment stage, unless it is qualified as a business record under Federal Rule of Evidence 803(6)." *Id.* at 470. However, the City has not authenticated the report as a business record. *See id.* (declining to consider a report summarizing the findings of an internal investigation into complaints of sexual harassment on summary judgment where the defendant failed to authenticate the report as a business record). Though the City claims that the report falls within the public records exception to the hearsay rule under Federal Rule of Evidence 803(8), the City is incorrect. The investigation into Plaintiff's complaint was completed by a private entity independent of the city: Public Sector HR Consultants. (Def. Statement at ¶ 73; Pl. Response at ¶ 73). Public Sector HR Consultants also wrote the "privileged and confidential" report summarizing the investigation. (*See* Docket No. 30-15). Thus, the report does not fall within Federal Rule of Evidence 803(3) for purposes of the instant motion, and, therefore, will not be considered.

**D. Plaintiff's October 2015 Evaluation**

On October 1, 2015, the City issued an "Employee Counseling Form" that indicated that Plaintiff had exhibited poor performance. (Docket No. 30-10 at 2). According to Plaintiff, during her meeting with Aber to discuss the form, Aber said, "that is what you get for wasting my time with the investigation." (Murphy Aff. at ¶ 11). Plaintiff signed the document later that evening after she had further time to review. (Pl. Response at ¶ 84; Docket No. 30-3 at 28). However, Plaintiff also wrote a memorandum disputing her poor performance evaluation. (Docket No. 30-19 at 2 ("I will sign the Employee Counseling Form with the understanding that this memo be included as my testimony that the Employee Counseling Form is subjective as well as the origin unfounded.")).

**E. Plaintiff's Post Counseling Performance**

In November 2015, a tax lien was taken out on a property even though the property owner had paid his property taxes. (Def. Statement at ¶ 92; Pl. Response at ¶ 92). Plaintiff maintains that the lien was taken out in her absence. (Pl. Response at ¶ 92; Docket No. 30-20 at 2). Plaintiff did not know how to fix the issue, however. (Docket No. 30-2 at 38). Therefore, DeMora fixed the problem. (Def. Statement at ¶ 93; Pl. Response at ¶ 93).

During this time, Plaintiff continued to have difficulty reconciling payments made by credit card to ensure that taxpayer accounts were properly credited. (Def. Statement at ¶ 94; Pl. Response at ¶ 94). Plaintiff also continued to make mistakes regarding the reconciliations of monies collected and input into the monthly reconciliations in November and December of 2015.[8] (Def. Statement ¶ 95; Pl. Response at ¶ 95). On at least one occasion, Plaintiff left money

---

[8] Plaintiff maintains, however, that she was never taught the complete process for doing monthly reconciliations. (Murphy Affidavit at ¶ 96).

overnight in a locked cabinet in her office rather than in the safe, as was required. (Def. Statement at ¶ 96; Docket No. 30-3 at 7–8; Docket No. 30-27 at 2).

On December 28, 2015, Aber e-mailed Plaintiff, "You can't keep relying on Katie to help you. She has her own workload to handle." (Docket No. 30-30 at 2). In January of 2016, DeMora was still teaching Plaintiff how to do reconciliations. (Def. Statement at ¶ 105; Pl. Response at ¶ 105). Around that time, DeMora also expressed concerns to Aber about having to complete Plaintiff's work. (Def. Statement at ¶ 102; Pl. Response at ¶ 102; Docket No. 30-29 at 2 ("[W]ith all due respect, I will not continue to hold [the] Tax Collectors [sic] hand . . . she does not seem to grasp the training that either one of us have given her. I had an anxiety attack yesterday morning due to her incompetence and I wish to no longer continue to clean her mess.")). As of January 13, 2016, Plaintiff had not completed the monthly reconciliation for November 2015, which was due a month prior. (Def. Statement at ¶ 107; Pl. Response at ¶ 107; Docket No. 30-29 at 3). Plaintiff acknowledged that she still did not know how to properly use the City's financial systems at that point in time. (Def. Statement at ¶ 109; Pl. Response at ¶ 109).

**F. Plaintiff's Termination**

On December 30, 2015, Aber recommended in writing that Ciaravino terminate Plaintiff's probationary City employment. (Def. Statement at ¶ 110; Pl. Response at ¶ 110). Ciaravino had several conversations with Aber and others to discuss the possibility of terminating Plaintiff. (Def. Statement at ¶ 112; Pl. Response at ¶ 112). During these conversations, Ciaravino was told that the money collected by Plaintiff's office was not being timely deposited. (Def. Statement at ¶ 113; Pl. Response at ¶ 113; Docket No. 30-4 at 18). Ciaravino met with Plaintiff on January 19, 2016. (Def. Statement at ¶ 115; Pl. Response at ¶

115). Aber and City Corporation Counsel Michelle Kelson ("Kelson") were also present. (Def. Statement at ¶ 116; Pl. Response at ¶ 116). Kelson told Plaintiff that she had inaccurately calculated a property tax. (Def. Statement at ¶¶ 118–19; Pl. Response at ¶¶ 118–19; Docket No. 30-3 at 37–38; Docket No. 30-4 at 19 ("[I]t was explained that [Plaintiff] had sent out inaccurate tax bills.")). According to Plaintiff, she relied upon numbers provided by other City employees. (Docket No. 30-3 at 39). After a break in the meeting, Ciaravino terminated Plaintiff's employment. (Def. Statement at ¶ 120; Pl. Response at ¶ 120). Though Plaintiff asked for three months to "turn the whole tax collection department around," her request was denied. (Def. Statement at ¶¶ 121–22; Pl. Response at ¶¶ 121–22).

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party bears the burden of demonstrating that it is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to a material fact "exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." *Beyer v. Cty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Casalino v. N.Y. State Catholic Health Plan, Inc.*, No. 09 Civ. 2583(LAP), 2012 WL 1079943, at *6 (S.D.N.Y. Mar. 30, 2012) (internal quotation marks omitted).

In reviewing a motion for summary judgment, the Court "must draw all reasonable inferences in favor of the [non-moving] party" and "must disregard all evidence favorable to the

moving party that the jury is not required to believe." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000). That said, the Court may not weigh the evidence or determine the truth of the matter, but rather conducts "the threshold inquiry of determining whether there is the need for a trial[.]" *Anderson*, 477 U.S. at 250.

The moving party bears the initial burden of "demonstrating the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 323). If the moving party meets this initial burden, the burden then shifts to the non-moving party to "present evidence sufficient to satisfy every element of the claim." *Id.* "The non-moving party is required to 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial,'" *id.* (citing *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 249–50), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-moving party fails to establish the existence of an essential element of the case on which it bears the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

In the Southern District of New York, parties moving for and opposing summary judgment must also submit short and concise statements of facts, supported by evidence that would be admissible at trial. Local Civ. R. 56.1. The opposing party must specifically controvert the moving party's statement of material facts, or the moving party's facts will be deemed admitted for purposes of the motion. Local Civ. R. 56.1(c); *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible."). However, uncontested facts cannot be deemed true simply by virtue of their

assertion in a Local Rule 56.1 statement; the Court is free to disregard the assertion in the absence of citations or where the cited materials do not support the factual assertions in the statements. *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001).

## III.  DISCUSSION

Plaintiff alleges that the City: (1) terminated her on the basis of her race and gender in violation of 42 U.S.C. § 2000(e); and (2) retaliated against her for complaining of discrimination in violation of 42 U.S.C. § 2000(e). (Docket No. 1 at 8).  Defendant argues that Plaintiff's discrimination claims fail as a matter of a law because there is no evidence that Plaintiff was discriminated against on the basis of race or gender. (Def. Br. at 6).  Moreover, Defendant maintains that Plaintiff's retaliation claim fails as a matter of law because she fails to show a causal connection between her unsubstantiated complaint and her later termination. (*Id.*).  For the reasons that follow, each of Plaintiff's claims are dismissed.

### A.  Discrimination in Violation of Title VII

Discrimination claims brought under Title VII are analyzed under the burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Ruiz v. Cty. Of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010); *Holcomb*, 521 F.3d at 138; *Varughese v. Mt. Sinai Med. Ctr.*, No. Civ. 8812 (CM)(JCF), 2015 WL 1499618, at *38 (S.D.N.Y. Mar. 27, 2015).

Under the framework, the plaintiff must first establish a *prima facie* case of discrimination by a preponderance of the evidence. *See Sosa v. Rockland Cty. Comty. Coll.*, 15 Civ. 3329 (JCM), 2017 WL 3105872, at *4 (S.D.N.Y. July 20, 2017).  To establish a *prima facie* case of discriminatory termination under Title VII, the plaintiff must show that: (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she was discharged; and (4) her discharge occurred in circumstances giving rise to an inference of discrimination on the

basis of her membership in that class. *See McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Altman v. New Rochelle Pub. Sch. Dist.*, 13 Civ. 3253 (NSR), 2016 WL 3181153, at *2 (S.D.N.Y. June 2, 2016).

Once the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." *Holcomb*, 521 F.3d at 138 (quoting *McDonnell Douglas,* 411 U.S. at 802); *see also Reeves*, 530 U.S. at 142 ("This burden is one of production, not persuasion."). If the defendant provides a nondiscriminatory basis for the employment decision, "the burdens shifts back to plaintiff to demonstrate, by a preponderance of the evidence, that the defendant's reasons are merely pretext for discrimination." *Sosa*, 2017 WL 3105872, at *4. "The plaintiff need not prove that the explanation offered by the employer was entirely false 'but only that . . . [the defendant's] stated reason was not the only reason' and that consideration of an impermissible factor 'did make a difference.'" *Phillips v. Dow Jones & Co.,* No. 04 Civ. 5178(DAB), 2009 WL 2568437, at *9 (S.D.N.Y. Aug. 17, 2009) (quoting *Montana v. First Fed. Sav. & Loan Ass'n of Rochester*, 869 F.2d 100, 105 (2d Cir. 1989)) (alteration in original). Plaintiff will survive summary judgment if it produces "evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole *or in part by* . . . discrimination." *Id.* (internal quotation marks omitted).

The Second Circuit has "repeatedly expressed the need for caution about granting summary judgment to an employer in a discrimination case where, as here, the merits turn on a dispute as to the employer's intent." *Holcomb*, 521 F.3d at 137. Thus, "affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir.

1994). Still, conclusory allegations of discrimination are insufficient to prove discriminatory intent. *See Holcomb*, 521 F.3d at 137.

## 1. *Prima Facie* **Case of Discrimination**

Defendant maintains that Plaintiff cannot establish two of the four elements necessary to make out a *prima facie* case: that she was performing her duties satisfactorily and that her termination arose under circumstances giving rise to an inference of race or gender based discrimination. (Def. Br. at 9). For the reasons that follow, the Court concludes that Plaintiff makes out a *prima facie* case of race-based discrimination, but fails to establish a *prima facie* case of gender-based discrimination.

First, the Court finds that Plaintiff has established her minimum qualifications for the position. While "the Second Circuit has sometimes described the qualifications prong as requiring a demonstration of 'satisfactory performance' to make out a prima facie case . . . the Second Circuit is also clear that to make a prima facie case, 'all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer.'" *Henderson v. Montefiore Medical Center*, No. 12 Civ. 1468(HB), 2013 WL 1155421, at *3 (S.D.N.Y. Mar. 21, 2013) (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 91–92 (2d Cir. 2001)). Moreover, the "minimum qualification standard is not burdensome, especially where discharge is at issue and the employer has already hired the employee." *Id.* (internal quotation marks omitted).

Accordingly, Plaintiff established basic eligibility for the position as is required for a *prima facie* case. Despite Defendant's dissatisfaction with Plaintiff's performance, it is undisputed that she "possesse[d] the basic skills necessary for performance of [the] job." *Owens v. New York City Housing Auth.*, 934 F.2d 405, 409 (2d Cir. 1991) (internal quotation marks omitted). Plaintiff met the minimum qualifications by passing a civil service test, as is required

by the New York Civil Service Law and the Newburgh Civil Service Commission's Rules and Regulations. (Def. Statement at ¶ 7; Pl. Response at ¶ 7; Docket No. 30-6 at 2). Plaintiff also studied finance and accounting in college, (Docket No. 33-1 at 15), and was proficient in Microsoft Excel, (*id.* at 29).

With respect to whether Plaintiff has shown that her termination occurred under circumstances giving rise to an inference of race-based discrimination, the Court finds that Plaintiff has met her burden. It is well-settled that "the mere fact that a plaintiff was replaced by someone outside of the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis[.]" *Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001); *Littlejohn v. City of New York*, 795 F.3d 297, 313 (2d Cir. 2015). Thus, Plaintiff's replacement by DeMora, who is not African American, is sufficient to make out a *prima facie* case of racial discrimination.[9] *See, e.g.*, *Dabney v. Christmas Tree Shops*, 958 F.Supp.2d 439, 451–52 (S.D.N.Y. 2013); *Henderson*, 2013 WL 1155421, at *3.

Second, the Court finds, however, that Plaintiff has not shown that her termination occurred under circumstances giving rise to an inference of gender-based discrimination. Plaintiff's complaint alleges that Aber treated "white males in a dissimilar and superior manner, valuing their knowledge, skills and abilities." (Docket No. 1 at ¶ 47). Yet, Plaintiff fails to identify a single discriminatory statement, or specific instance of discrimination that was based upon her protected status. *See Vargas v. Manhattan and Bronx Surface Transit Operating Auth.*, No. 08 Civ. 9254(AKH), 2010 WL 1783555, at *5 (S.D.N.Y. Apr. 30, 2010); *Meiri v. Dacon*,

---

[9] Defendant asserts that DeMora is "non-white," therefore "undercutting" Plaintiff's claim of racial bias. (Def. Reply at 10). This designation, however, is not relevant. Because DeMora is not African American, she falls outside of the protected class at issue. *See, e.g.*, *Finey v. Planned Parenthood of New York City*, No. 02 Civ. 7942 (CBM), 2003 WL 22928730, at *5 (S.D.N.Y. Dec. 10, 2003) (finding that an African American plaintiff established a *prima facie* case of race discrimination by showing that her duties were taken on by a "Latina").

759 F.2d 989, 998 (2d Cir. 1985) (explaining that "purely conclusory allegations of discrimination, absent concrete particulars" are insufficient to avoid summary judgment). Plaintiff merely states that she "saw Mr. Aber interact much more respectfully toward men at the workplace[.]" (Pl. Counterstatement at ¶ 71 (citing Murphy Aff. at ¶ 8)). That Aber was generally condescending to Plaintiff and her female colleagues, (Pl. Response at ¶ 69), "gives rise to mere speculation and conjecture," and is insufficient to "allow[ ] for a reasonable inference of discrimination," [10] *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 448 (2d Cir. 1999); *Vargas*, 2010 WL 1783555, at *5 ("[C]ourts must carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture." (internal quotation marks omitted)); *see also Norton v. Sam's Club,* 145 F.3d 114, 120 (2d Cir.1998) (explaining that anti-discrimination law "does not make employers liable for doing stupid or even wicked things; it makes them liable for *discriminating*" on the basis of a protected status). Plaintiff's unsupported statement is particularly unavailing given the evidence in the record of complaints from at least one male employee about Aber. (*See* Docket No. 30-4 at 24–25). Moreover, the City "replaced Plaintiff with another woman, further weakening her claim of gender discrimination." *Dabney*, 958 F. Supp. 2d at 452; *Jean-Gilles v. Cnty. Of Rockland*, 195 F. Supp. 2d 528, 533 (S.D.N.Y. 2002).

In Plaintiff's affidavit, she further asserts that "white male managers who have engaged in substantial misconduct have not been subject to discipline by the City of Newburgh." (Murphy

---

[10] The Second Circuit has noted that an allegation that a "supervisor directed harsh comments only at female employees" might provide a good faith basis for plaintiff's complaint of gender discrimination. *Drumm v. SUNY Geneseo Coll.*, 486 Fed. Appx. 912, 914 n.3 (2d Cir. 2012) (noting the absence of allegations regarding "how her supervisor treated other employees"). Here, however, every member of Plaintiff's staff and Aber's staff within the Comptroller's Officer were female. (Docket No. 30-3 at 18). Thus, an allegation that female employees were subjected to harsh comments while white males were not, does not form a good faith basis for Plaintiff's gender discrimination complaint.

Aff. at ¶ 28 (explaining that a white male manager in the City's Department of Public Works who made "blatantly racist comments" maintained his position). While a plaintiff may raise an inference of discrimination by showing that the employer subjected her to disparate treatment, the "plaintiff must show that she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). Thus, "a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards" and that "the conduct for which the employer imposed discipline was of comparable seriousness." *Id.* at 40. Here, however, the referenced white male manager worked in a completely separate department and the conduct for which he was disciplined was very different than that alleged in this case. In addition, the underlying incident with the white male manager occurred in 2009—six years prior to Plaintiff's hiring— and involved a different supervising City Manager, not Ciaravino. (Def. Reply at 9; Docket No. 33-8); *Conway v. Microsoft Corp.*, 414 F. Supp. 2d 450, 465–66 (S.D.N.Y. 2006) (examining whether employees report to the same supervisor in determining whether the employers were subject to the same workplace standards).

Because Plaintiff fails to establish a *prima facie* case of gender-based discrimination, Defendant's motion for summary judgment as to Plaintiff's gender discrimination claim under Title VII is granted.

## 2. The City's Non-Discriminatory Reason for Termination

Because Plaintiff has made out a *prima facie* case of race-based discrimination, the burden shifts to Defendant to produce evidence that Plaintiff was terminated for a legitimate, nondiscriminatory reason. The Court finds that Defendant has done so. Defendant maintains that Plaintiff was terminated because her "performance as Tax Collector was well below the City's reasonable expectation level." (Def. Br. at 18). The undisputed evidence is consistent

with Defendant's given rationale.  By Plaintiff's own admission, "there were times when the figures in the reconciliations did not add up." (Pl. Response at ¶ 54; *see also id.* at ¶ 95). Plaintiff also admits that on one occasion, incorrect accounts were credited for tax payments, (*id.* at ¶ 91), and on at least one occasion she left money in a locked cabinet rather than the safe as was required, (*id.* at ¶ 96; *see also* Murphy Aff. at ¶ 97 (admitting that locking the money in the cabinet was "more convenient" than the safe)).  Significantly, Plaintiff admitted that even after seven months on the job, she still did not know how to properly use the City's financial systems, (Pl. Response at ¶ 109), and further, that DeMora was still "teaching" her how to do reconciliations, (*id.* at ¶ 105).  Therefore, the Court finds Defendant's stated reasons for terminating Plaintiff legitimate and non-discriminatory.

**3.  Evidence of Pretext**

Plaintiff fails to put forth sufficient evidence to demonstrate that the City's proffered reason for her termination was pretext for race-based discrimination.  First, while Plaintiff notes that she had received positive evaluations of her job performance, (Pl. Response at ¶ 65), "that evidence, standing alone, does not create a genuine factual issue as to whether discrimination was the actual motive behind plaintiff's discharge, and fails completely to address the extensive record of plaintiff's negative job performance," *Garrett v. Garden City Hotel, Inc*., No. 05-CV-0962 JFB AKT, 2007 WL 1174891, at *14 (E.D.N.Y. Apr. 19, 2007); *Taylor v. Polygram Records*, No. 94 Civ. 7689(CSH), 1999 WL 124456, at *14 (S.D.N.Y. Mar. 8, 1999) ("The fact that [plaintiff] may have received prior positive evaluations cannot in itself demonstrate that her later negative evaluations, and the concomitant proffered explanation, are unworthy of credence."); *Brown v. Soc. for Seaman's Children,* 194 F.Supp.2d 182, 192 (E.D.N.Y.2002) ("Plaintiff also points to the good evaluations that she had received, but that evidence does not tend to show that her discharge was the product of discrimination.").

Plaintiff also repeatedly asserts that she was unable to complete many of her job functions because she lacked proper training from the City. (*See* Pl. Response at ¶¶ 53, 93, 96, 107, 108; Pl. Opp. at 25). However, the record makes clear that Plaintiff was shown how to use the ICIS system,[11] (Docket No. 30-2 at 39, 41), and that Plaintiff received basic training on the KVS system, (*id.* at 33). Furthermore, Plaintiff admits that she could call ICIS and KVS support for assistance with specific problems that she encountered, (Pl. Response at ¶ 32), that DeMora initially showed her how to do the monthly reconciliations, (*id.* at ¶ 52), and that DeMora continued to provide her with guidance seven months into her employment, (*id.* at ¶ 105). Consequently, it is undisputed that at minimum, Plaintiff received basic training, as well as some ongoing assistance throughout her employment with respect to her essential duties. (*See also* Docket No. 30-8 (listing training Plaintiff received and logging hours spent)). In any event, courts in this Circuit have recognized that "faulting others for or otherwise rationalizing problems legitimately perceived by one's employer does not establish discriminatory animus." *See Lawrence v. State Univ. of New York*, No. 01 Civ. 7395 AKH, 2002 WL 31812700, at *5 (S.D.N.Y. Dec. 12, 2002); *Taylor*, 1999 WL 124456, at *10 ("The evidence . . . merely serves to shift blame for, or rationalize, these incidents to show that the criticism was underserved. But . . . [this] does not establish pretext."); *McLee*, 109 F.3d at 135 (noting that plaintiff's "disputations were rationalizations for his deficiencies rather than demonstrations of any genuine issue of material fact to be tried").

---

[11] Plaintiff denies receiving "formal training on ICIS" in her Response to Defendant's Statement of Facts. (*See* Pl. Response at ¶ 29). However, Plaintiff cites to her own deposition for support, in which she indicated that Diane McGraw of the City's Water Department showed her how to use ICIS. (Docket No. 33-2 at 5). Whether the training was "formal" or not is immaterial. It is clear that Plaintiff received basic training and had ICIS and KVS support available to her when she had an issue. (Pl. Response at ¶ 32).

Moreover, even if the Court were to assume that Defendant's explanation for Plaintiff's termination could be found by a jury to be pretextual, Plaintiff's *prima facie* case, without more, would be insufficient to survive summary judgment. *See James v. N.Y. Racing Ass'n*, 233 F.3d 149, 156 (2d Cir. 2000) ("[A] prima facie case, combined with falsity of the employer's explanation, will not [always] be sufficient…"); *see also Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir. 1995) ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the 'motivating' factors."). Plaintiff puts forth no colorable evidence, other than her own testimony, that demonstrates that race played any role in her termination.[12] *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 ("It is not enough . . . to *dis*believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.").

Plaintiff has failed to present plausible evidence suggesting that the legitimate, nondiscriminatory reason advanced by the City for Plaintiff's termination was a pretext for discrimination. *See Brown*, 194 F. Supp. 2d at 191 ("[A]lthough plaintiff felt she had been treated unfairly, . . . [t]here simply is no basis in the record from which a rational juror could find that the reasons given for plaintiff's termination . . . were false or a pretext for discrimination."). Moreover, Plaintiff has not set forth "sufficient evidence in the record to create an issue of fact as to the existence of discriminatory animus." *Watson*, 2013 WL 5420932, at *11. Accordingly,

---

[12] As previously noted, Plaintiff asserts that a white male supervisor in the City's Department of Public Works "engaged in substantial misconduct," but was not subject to discipline by the city. (Murphy Aff. at ¶ 28). Nevertheless, this evidence fails to support a claim of race-based discrimination for the same reasons outlined with respect to Plaintiff's claim of gender-based discrimination: Plaintiff fails to make any showing that the white supervisor was "similarly situated" to her in all material respects. *See Graham*, 230 F.3d at 39.

Defendant's motion for summary judgment as to Plaintiff's race discrimination claim under Title VII is granted.

## B. Retaliation in Violation of Title VII

Title VII forbids discrimination against an employee "because [s]he has opposed any practice made an unlawful employment practice . . . or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the auspices of that statute." 42 U.S.C. § 2000e-3(a). Retaliation claims under Title VII are analyzed under the same burden-shifting framework as discrimination claims. *See Sumner v. U.S. Postal Service*, 899 F.2d 203, 208–209 (2d Cir. 1990). To make out a prima facie case of retaliation under Title VII, a plaintiff must show that "[s]he engaged in protected participation or opposition under Title VII, that the employer was aware of this activity, that the employer took adverse action against the plaintiff, and that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action." *Id*. Proof of causation, the final element of a *prima facie* retaliation claim, "can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319 (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000)).

Once the plaintiff puts forth a *prima facie case*, the burden shifts to the defendant to articulate a non-retaliatory reason for the adverse employment action. *See Ya-Chen Chen v. City Univ. of New York*, 805 F.3d 59, 70 (2d Cir. 2015). "If the defendant provides such an explanation, the presumption of retaliation dissipates, and the plaintiff must prove that the desire

to retaliate was the but-for cause of the challenged employment action." *Id.* (internal citations and quotation marks omitted).

### 1. *Prima Facie* Case of Retaliation

The Court finds that Plaintiff fails to make out a *prima facie* case of retaliation because she has not shown that she engaged in a protected activity. "For purposes of determining whether an activity is protected, Title VII's anti-retaliation provision includes both an opposition clause and a participation clause." *Sullivan v. NYC Dep't of Investigation*, 163 F. Supp. 3d 89, 102 (S.D.N.Y. 2016). "The opposition clause makes it unlawful for an employer to retaliate against an individual because she opposed any practice made unlawful by Title VII, while the participation clause makes it unlawful to retaliate against an individual because she made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* at 102–03 (internal quotation marks omitted); 42 U.S.C. § 2000e–3(a). The opposition clause also protects informal protests, including an employee's complaint to management, so long as the plaintiff has a "good faith, reasonable belief that [she] was opposing an employment practice made unlawful by Title VII." *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001). "The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998); *Johnson v. City Univ. of New York*, 48 F. Supp. 3d 572, 576 (S.D.N.Y. 2014) ("A plaintiff's belief on this point is not reasonable simply because he or she complains of something that appears to be discrimination in some form, even when the complaint cites reprehensible language or behavior." (internal quotation marks omitted)).

During Plaintiff's deposition, she testified that she expressed concerns to Ciaravino about how Aber spoke to her and "other women." (Docket No. 30-3 at 17; *see also* Pl. Response at ¶ 69). Aside from this general statement, however, Plaintiff offers no admissible evidence that her

October 2015 complaint to Ciaravino "protested discrete acts" of either race-based or gender-based discrimination.[13] *Hirallal v. Sentosacare, LLC*, 13 Civ. 4437 (GBD), 2016 WL 1126530, at *12 (S.D.N.Y. Mar. 18, 2016) (finding that plaintiff's internal complaint did not constitute protected activity in the absence of evidence that plaintiff "protested discrete acts of race or national origin-based discrimination"); *Brown v. City of New York*, No. 11 Civ. 2915(PAE), 2013 WL 3789091, at *15 (S.D.N.Y. July 19, 2013) (finding plaintiff's memorandum which stated that her co-worker had "aggressive behavior with females" did not constitute "protected activity" because her memorandum contained "at best glancing references to any gender focus"); *see also Risco v. McHugh*, 868 F. Supp. 2d 76, 99 (S.D.N.Y. 2012) ("A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge, is . . . insufficient [to defeat summary judgment]."); *Bickerstaff*, 196 F.3d at 452 ("Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.").

Even if Plaintiff believed that she was complaining of conduct that violated Title VII, "a mere subjective good faith belief is insufficient; the belief must be reasonable and characterized by *objective* good faith." *Johnson*, 48 F. Supp. 3d at 577 (internal quotation marks omitted). As previously noted, however, the four clerks who worked under Plaintiff were female and all of Aber's staff within the Comptroller's Office were female as well. (Docket No. 30-3 at 18). As

---

[13] Indeed, the additional evidence in the record concerning Plaintiff's October 2015 complaint fails to make any reference whatsoever to treatment on the basis of a protected class or status. (*See* Docket No. 30-16 at 2; Docket No. 30-17 at 2). For example, in an e-mail to Ciaravino regarding Aber, Plaintiff wrote, "I'm very upset and feel bullied by my immediate supervisor! . . . I will not be harassed, intimidated or bullied for voicing my opinion. . . . I do not want to lose my job because of repercussions due to the fact that I refuse to be bullied and I speak up against it!" (Docket No. 30-16 at 2). These types of complaints are insufficiently "specific to make it clear that the employee is complaining about conduct prohibited by Title VII." *Risco v. McHugh*, 868 F. Supp. 2d 76, 110 (S.D.N.Y. 2012); *Drumm v. SUNY Geneseo Coll.*, 486 Fed. Appx. 912, 914 (2d Cir. 2012) ("[P]laintiff's allegations that her supervisor 'berated' her and made other harsh comments—for example, that she was a 'disappointment' to him—amount only to general allegations of mistreatment, and do not support an inference that plaintiff had a reasonable good faith belief that she was subject to gender discrimination.").

such, Plaintiff had no basis for comparison when she expressed concerns about how Aber had

spoken to her and "other female members of her staff." (Pl. Response at ¶ 69). Viewed in

conjunction with Plaintiff's e-mail and texts to Ciaravino, which focused on "bullying and

harassment" without any reference to race or gender, the Court concludes that Plaintiff could not

have had an *objective* good faith belief that the conduct she complained of violated Title VII. *See

Plahutnik v. Daikin Am., Inc.,* 912 F. Supp. 2d 96, 108 (S.D.N.Y. 2012) ("Plaintiff does not

assert that the complaints were specifically discrimination—as opposed to 'general allegations of

mistreatment,' which are not 'protected' under Title VII, let alone that his complaints were

specific enough such that his employer 'understood, or could reasonably have understood' that

they were directed at discrimination on the basis of [a protected class]."). Accordingly, Plaintiff

fails to make out a *prima face* case of retaliation.

## 2. The City's Non-Discriminatory Reason for Termination and Evidence of Pretext

Assuming Plaintiff could make out a *prima facie* case of retaliation, the Court finds that

Defendant has nonetheless articulated a legitimate, nondiscriminatory reason for Plaintiff's

termination, *see supra* Section III.A.2, and Plaintiff has not shown that the City's proffered

reason for her termination was mere pretext. "Plaintiff's burden at this stage is to proffer

admissible evidence from which a rational trier of fact could conclude that retaliation was more

likely than not the true motivation of defendant's acts." *Forest v. New York State Office of

Mental Health*, No. 13 Civ. 1762 (KBF), 2015 WL 6965149, at *10 (S.D.N.Y. Nov. 10, 2015).

As previously discussed, Plaintiff does not dispute that she was unable to complete many of her

job functions. *See supra* Section III.A.2. Rather, Plaintiff maintains that her conditions of

employment worsened after she complained about Aber, but the only support for this assertion

are Plaintiff's own self-serving statements in her affidavit, which are insufficient to withstand

summary judgment. *See, e.g.*, *Risco*, 868 F. Supp. 2d at 99; *Gonzalez v. Beth Israel Med. Ctr.*,

262 F. Supp. 2d 342, 353 (S.D.N.Y. 2000). "[A]s this Circuit has recognized, 'a party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove.'" *Hirallal*, 2016 WL 1126530, at *14 (quoting *Hicks v. Baines*, 693 F.3d 159, 167 (2d Cir. 2010)); *Nadel v. Shinseki*, 57 F. Supp. 3d 288, 293 n.6 (S.D.N.Y. 2014). Plaintiff's contention that "Aber deprived her of support and assistance intentionally and then made much of her predictable incapacity to do functions he assigned to her" is belied by the other evidence in the record, particularly DeMora's January 2016 note to Aber in which she stated, "I will not continue to hold [the] Tax Collectors [sic] hand . . . she does not seem to grasp the training that either of us have given her. I had an anxiety attack yesterday due to her incompetence and I wish to no longer continue to clean her mess." (Docket No. 30-29 at 2).

Furthermore, while Plaintiff may have shown that her "termination was the consequence of Mr. Aber's desire to be rid of [her]," (Murphy Aff. at ¶ 12), Plaintiff has failed to "demonstrate that considerations of [her gender] played *any* role, much less a 'but-for' role, in the conduct alleged[.]" *Bob v. Madison Sec. Grp., Inc.,* No. 14 Civ. 9727 (KPF), 2016 WL 6952259, at *12 (S.D.N.Y. Nov. 28, 2016). Accordingly, Plaintiff's claim of retaliation under Title VII is denied as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion is granted. The Clerk is respectfully requested to terminate the pending motion, (Docket No. 27), and close the case.

Dated: September 26, 2018
    White Plains, New York

SO ORDERED:

_Judith C. McCarthy_

JUDITH C. McCARTHY
United States Magistrate Judge